UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIM. ACTION NO. 3:23-00013-04 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| JAMARCUS G JACKSON (04) | MAG. JUDGE KAYLA D. MCCLUSKY |

**REPORT AND RECOMMENDATION**

Defendant Jamarcus G. Jackson is charged with one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and (b)(1)(C), and 846; and one count of distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). [doc. #40]. On August 18, 2023, Jackson filed a motion to suppress all evidence obtained during execution of a search warrant on February 28, 2023, at 118 Cotton Bayou Lane. [doc. #118]. The motion is opposed. [doc. #122]. For the following reasons, it is recommended that the motion to suppress [doc. #118] be DENIED.

**Background**

On February 8, 2023, a federal grand jury returned a superseding indictment charging Jamarcus G. Jackson ("Defendant") with one count of conspiracy to possess with intent to distribute methamphetamine under 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(C), and 846; and one count of distribution of methamphetamine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Superseding Indictment [doc. #40, pp.1-2, 5-6].

Shortly thereafter, around 8:00am on the morning of February 28, 2023, law enforcement officers commenced surveillance of the residence at 118 Cotton Bayou Lane, Monroe, Louisiana,

1

to locate Defendant and effect his arrest pursuant to the federal indictment. Report of Investigation [doc. #119-1, p.1]. Approximately forty minutes after the stakeout commenced, officers observed Defendant exit the residence, get into a blue Dodge Charger, and drive away from the premises. *Id.* Officers executed a traffic stop of the vehicle and placed Defendant under arrest. *Id.* at pp.1-2.

During the stop, officers smelled "a strong odor of marijuana coming from inside" the automobile. Application for Search Warrant [doc. #119, p.3]. Defendant advised the officers that he possessed marijuana inside the vehicle. *Id.* A search of the car identified "approximately one pound of marijuana." *Id.* Law enforcement officers returned to the residence at 118 Cotton Bayou Lane and contacted Annie Jackson ("Ms. Jackson"), the owner of the residence. Report of Investigation [doc. #119-1, p.2]. Ms. Jackson confirmed that Defendant was her grandson and that he lived on the premises. Application for Search Warrant [doc. #119, p.3].

The officers then sought a search warrant for 118 Cotton Bayou Lane. Report of Investigation [doc. #119-1, p.2]. Agent Tyler Dooley ("Agent Dooley") swore out the following affidavit ("the Affidavit") in support of the search warrant request:

> On 02/28/2023 MNU Agents were conducting surveillance at 118 Cotton Bayou Lane Monroe, LA 71202 in attempts located [sic] Jamarcus Jackson to serve federal arrest warrants for narcotics violations. While conducting surveillance, MNU Agents observed Jackson leave 118 Cotton Bayou Lane in a blue Dodge Charger bearing Louisiana license plate 209FIV, which is known to be utilized by Jackson. A traffic stop was then conducted on the vehicle Jackson was driving. Once the vehicle came to a stop, Jackson was placed under arrest for the active warrants. Deputies could smell a strong odor of raw marijuana coming from inside the vehicle. Jackson also told deputies at the scene there was marijuana inside the vehicle. During a search of the vehicle, OPSO Deputies located approximately one pound of suspected marijuana inside Jackson's vehicle. After securing Jackson, MNU Agents arrived at 118 Cotton Bayou Lane and contacted Annie Jackson. Annie advised she was Jackson's grandmother and Jackson did live at the residence. Your affiant is requesting a search warrant for 118 Cotton Bayou Lane Monroe, LA 71202 to further this narcotics investigation.

Application for Search Warrant [doc. #119, p.3]. The Affidavit was sworn to and subscribed before Judge Walter M. Caldwell ("Judge Caldwell") of the Fourth Judicial District, Ouachita Parish, Louisiana, at 9:45am on February 28, 2023. *Id.*

Judge Caldwell authorized a search warrant ("the Warrant") shortly thereafter. *Id.* at p.4. In granting the Warrant, Judge Caldwell submitted the following statement:

> "Affidavit(s) having been made before me by Detective Sr. Inv. Tyler Dooley, of the Ouachita Parish Sheriff's Office, that they have good reason to believe that on or in a property located at 118 Cotton Bayou Lane, Louisiana, 71202, located within the Parish of Ouachita, State of Louisiana, there is now being concealed certain property, namely, [],[1] which said property constitutes evidence of the violation of La. R.S. Count(s) 1 of RS40:966/AC [Possession of Schedule I Drug with Intent to Distribute] (Felony) of the Louisiana Revised Statutes, and as I am satisfied with the affidavit(s) submitted in support of the application for this warrant that there is probable cause to believe that the aforesaid property is being concealed on or in the above described, and that the aforesaid grounds for the issuance of this search warrant exist.

*Id.*

At approximately 9:51am – less than two hours after the stakeout had commenced – the Warrant was executed. Report of Investigation [doc. #119-1, pp.2-3]. Ms. Jackson directed law enforcement officers to a bedroom she indicated was used by Defendant. *Id.* at p.2. Therein, the officers located "an undetermined amount of US currency," a 9mm magazine, a loaded Glock handgun, numerous plastic bags containing suspected methamphetamine, papers depicting gambling transactions made by Laneython T. Ignont (a co-defendant named in the February 8, 2023 indictment), and a picture depicting Defendant and Ignont. *Id.* at pp.2-3.

On August 18, 2023, Defendant moved to suppress the evidence recovered from 118 Cotton Bayou Lane. M/Suppress [doc. #118]. In a memorandum supporting the motion, Defendant argues that the Affidavit is "bare bones" and "so lacking in indicia of probable cause" that no

---

[1] The statement is blank at this point.

reasonable officer could have a good faith belief in the Warrant's validity. Memorandum in Support of M/Suppress [doc. #118-1, p.1].

The Government responded with a memorandum in opposition to the motion on September 1, 2023. Memorandum in Opposition to M/Suppress [doc. #122]. Therein, the Government argues that Affidavit is not "bare bones" and contains statements sufficient to support good-faith reliance on the Warrant. *Id.* at pp.5-11.

No further documents have been filed, and the time to do so has passed. Accordingly, the matter is ripe.

## Analysis

I. *Relevant Law*

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. CONST. amend. IV. All evidence obtained through unreasonable searches and seizures is inadmissible in court. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). This concept, referred to as the exclusionary rule, requires, *inter alia*, courts to suppress evidence seized pursuant to warrants that are unsupported by probable cause.[2,3] *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (citing *Mapp*, 367 U.S.). However, this rule is abrogated if evidence is obtained "in objectively reasonable good-faith reliance" upon a defective warrant. *Pope*, 467 F.3d at 916. Accordingly, the Fourth Amendment does not require the suppression of evidence

---

[2] "[T]he probable cause standard is . . . a 'practical, nontechnical conception.'" *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232.

[3] Generally, a defendant seeking suppression bears the burden of proving, by a preponderance of the evidence, that his constitutional rights were violated by the search at issue. *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

obtained pursuant to objectively reasonable reliance on a warrant, even if the warrant is subsequently invalidated. *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999) (citing *United States v. Leon*, 468 U.S. 922 (1984)).

Bearing these principles in mind, motions to suppress are analyzed under a two-step process. First, the court determines whether the good-faith exception to the exclusionary rule applies. *United States v. Wilson*, No. 22-40591, 2023 WL 3267842, at *1 (5th Cir. May 5, 2023). If the good-faith exception applies, then the motion to suppress should be denied. *Id.* If the exception does not apply, the court proceeds to the second step and determines whether the warrant-granting magistrate had "a substantial basis . . . for concluding that probable cause existed." *Id.* (citations omitted).

II. *The Good-Faith Exception*

The good-faith exception to the exclusionary rule dictates that "evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible . . . even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). Issuance of a warrant by a magistrate is typically sufficient to establish good faith by the law enforcement officers conducting a search pursuant to the warrant. *Id.* As noted above, a law enforcement officer's good-faith reliance on the magistrate's probable cause determination must be objectively reasonable. *Cherna*, 184 F.3d at 407.

The Fifth Circuit has identified four circumstances in which an officer will have no reasonable grounds for believing that a warrant was properly issued. *Id*.

1. *Fraudulent Information* – The good-faith exception does not apply if the issuing magistrate was misled by information in an affidavit that "the affiant knew was false

5

or would have known was false" but for reckless disregard of the truth.  *Leon*, 468 U.S. at 923.

2. *Abandonment of the Judicial Role* – Suppression remains appropriate if the issuing magistrate "wholly abandoned his judicial role . . . ."  *Id.*

3. *Defective Affidavit* – A finding of objective good-faith reliance is inappropriate when an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." [4]  *Id.*

4. *Facially Defective Warrant* – A warrant "may be so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."  *Id.*

In the instant case, Defendant invokes the Defective Affidavit exception, arguing that the Affidavit is "so lacking in indicia of probable cause that any belief in the existence of probable cause was unreasonable."  Memorandum in Support of M/Suppress [doc. #118-1, p.1]. Affidavits implicated by the Defective Affidavit exception are generally referred to as 'bare bones affidavits.'  *See, e.g., United States v. Alix*, 86 F.3d 429, 435 (5th Cir. 1996) ("An officer may rely in good faith on the validity of a warrant so long as the warrant is supported by more than a 'bare bones affidavit.'").  Such affidavits contain "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause."  *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992).  "Reasonable minds

---

[4] The undersigned observes that, in cases where a warrant is supported by only a single affidavit, this rule essentially blends the first and second steps of the motion to suppress analysis into one.  In step one, for the court to analyze whether the Deficient Affidavit exception to the good-faith exception applies, the court must decide whether the law enforcement officers could reasonably believe the warrant-granting magistrate had information sufficient to determine the existence of probable cause.  In step two, the court must determine whether the magistrate had substantial basis for finding probable cause.  The distinction between the two steps is that the first concerns the law enforcement officer's perception of the existence of probable cause, while the second analyzes the warrant-granting magistrate's perception of the same.

may frequently differ on the question of whether a particular affidavit establishes probable cause," so it is appropriate to accord "'great deference'" to a magistrate's determination. *Leon*, 468 U.S. at 914 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Affidavits should be construed "in a common sense and realistic manner," with conclusions based on the totality of available facts. *Craig*, 861 F.2d at 821 (citations omitted).

The Fifth Circuit has found affidavits to be bare bones when the affiants merely listed "biographical and contact information" before stating the charged offense along with "a conclusory statement" that the defendant committed the same crime, *Spencer v. Staton*, 489 F.3d 658, 661-62 (5th Cir. 2007), or failed to establish "a nexus between the house to be searched and the evidence sought." *United States v. Brown*, 567 Fed.App'x 272, 282 (5th Cir. 2014) (describing such a nexus as potentially established via "direct observation or through normal inferences"). Conversely, affidavits have been found sufficient when the affiants provided information justifying suspicions of "continuing criminal conduct" associated with a particular residence, *Craig*, 861 F.2d at 823 (finding sufficient an affidavit describing pattern of drug distribution associated with defendant's residence), or "fully detail[ed] the facts surrounding" a defendant's arrest and discovery of contraband in the lead-up to seeking a subsequent warrant. *United States v. Morton*, 46 F.4th 331, 337-38 (5th Cir. 2022) (finding sufficient an affidavit describing circumstances of defendant's arrest during traffic stop, evidence found during same, and warrant's potential to further ongoing investigation).

Here, the Affidavit more closely resembles the affidavits in the latter category than those in the former. The Affidavit establishes that Defendant was named in an arrest warrant for federal narcotics charges. It also demonstrates that officers observed Defendant exiting the residence at 118 Cotton Bayou Lane in a vehicle that Defendant himself admitted contained a

7

distribution-level quantity of Schedule I drugs.[5]  Finally, the Affidavit describes the owner of 118 Cotton Bayou Lane confirming that Defendant lived at that address.

The Affidavit clearly describes the circumstances surrounding Defendant's arrest, the discovery of contraband, and the pursuit of further evidence.  This description goes beyond mere biographical and contact information and enters the realm of detailed context.  Defendant's indictment by a federal grand jury coupled with admitting to possession of a distribution-level volume of marijuana justifies suspicions of continued criminal activity; Defendant leaving his home with said contraband in tow establishes a clear nexus between the house and potential evidence of wrongdoing; and the temporal proximity between the identification of narcotics in Defendant's possession and his presence at the residence emphasizes the plausibility of further contraband being on the property at the time the warrant was requested.  Common sense analysis of the totality of facts present in the Affidavit makes clear that there was a fair probability that evidence of specific criminal activity (possession and distribution of illegal narcotics[6]) would be in a specific location (118 Cotton Bayou Lane) at a particular time (on the morning of February

---

[5] The Fifth Circuit has found that the amount of marijuana considered to be distribution-level can be significantly less than the volume Defendant possessed in his vehicle. *See United States v. Youngblood*, 576 F.App'x 403, 407 (5th Cir. 2014) (finding "nearly half a pound" of marijuana sufficient to support "conviction for intent to distribute marijuana").

[6] Though Judge Caldwell issued the Warrant in anticipation of officers seizing Schedule I drugs, it is of no moment that the search instead identified Schedule II methamphetamine.  Defendant's arrest immediately prior to the search of 118 Cotton Bayou Lane was pursuant to an indictment for possession with intent to distribute methamphetamine, and the Affidavit specifies that the Warrant was requested "to further this narcotics investigation" (i.e., the investigation into Defendant's alleged trafficking of methamphetamine).  Evidence of criminal activity found pursuant to a valid, properly executed search warrant cannot be suppressed merely on the basis that it was not specifically enumerated in the warrant or supporting affidavit.  *See, e.g., Horton v. California*, 496 U.S. 128, 139 (1990) ("[If an officer] has a valid warrant to search for one item and merely a suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first.").

28, 2023). The Affidavit may not be the paragon of precision, but it does not require mental gymnastics to find a fair probability that contraband or evidence of a crime would be found at 118 Cotton Bayou Lane on February 28, 2023. Thus, the Affidavit is not bare bones, so the officers' good-faith reliance upon Judge Caldwell's probable cause determination was objectively reasonable, and the exclusionary rule does not apply to the evidence obtained pursuant to the Warrant.[7, 8]

Accordingly, it is RECOMMENDED that the motion to suppress be denied.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the motion to suppress [docs. #118] filed by Defendant Jamarcus G. Jackson be **DENIED.**

---

[7] As the good-faith exception to the exclusionary rule applies, there is no need to proceed to the second step of the inquiry (i.e., whether the warrant-granting magistrate had a substantial basis for concluding that probable cause existed).

[8] Defendant makes a passing reference to "the technical sufficiency of the [W]arrant." Memorandum in Support of M/Suppress [doc. #118-1, p.1]. This may be referring to the Facially Defective Warrant exception to the good-faith exception. The Fifth Circuit has held that "a warrant that relies on an affidavit to meet [the technical requirements of the Fourth Amendment] must incorporate the affidavit by reference . . . ." *Cherna*, 184 F.3d at 411. Despite this directive, the Fifth Circuit has also held that warrants *not* incorporating a relied-upon affidavit may nonetheless be sufficient to trigger the good-faith exception. *See, e.g., United States v. Beaumont*, 972 F.2d 553, 561 (5th Cir. 1992) ("[T]here was a probable cause determination made by the state judge, the affidavit provided specific information of the objects of the search, the executing officer was the affiant, the additional officers making the search knew what was to be searched for, and, finally, the warrant could easily have been made valid by the insertion of the phrase 'see attached affidavit.'"). Here, Defendant makes no arguments concerning the deficiency of the Warrant. Even if such argument were offered, Judge Caldwell's statement granting the Warrant specifically refers to the Affidavit twice. And even if these references are insufficient, Judge Caldwell made a probable cause determination, the Affidavit supports that finding of probable cause, Agent Dooley executed the Warrant, and the officers with Agent Dooley had participated in the events leading up to the execution. Application for Search Warrant [doc. #119, p.4]; Report of Investigation [doc. #119-1, pp.1-3]. Thus, the Facially Defective Warrant exception to the good-faith exception does not apply here.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b), the parties have **fourteen (14)** days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 20th day of September, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE